UNITED STATES DISTRICT COURT
DISTRICT OF WYOMING

Trinity Teen Solutions, Inc., a Wyoming
Corporation,

                    Plaintiff,

  vs.

United Behavioral Health, a California
Corporation, d/b/a Optum,

                    Defendant.

Court File No.:  19-CV-45-SWS

**UNITED BEHAVIORAL HEALTH'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR RECONSIDERATION OF THIS COURT'S ORDER DATED APRIL 22, 2019 DENYING PLAINTIFF'S MOTION TO REMAND**

Defendant United Behavioral Health ("UBH") (incorrectly named as "United Behavioral Health, a California Corporation, d/b/a Optum")[1] submits this Memorandum of Law in Opposition to Plaintiff, Trinity Teen Solutions, Inc.'s ("TTS") Motion for Reconsideration of this Court's Order Dated April 22, 2019 Denying Plaintiff's Motion to Remand.

I.      **INTRODUCTION**

TTS goes to great lengths to attempt to avoid this Court's proper jurisdiction and the application of ERISA to its claims.  TTS was happy to assert that it had a valid and enforceable assignment of benefits when it submitted its claims for payment, but once it was discovered that

---

[1] While TTS has sued only UBH, the Plan's mental health administrator, United Healthcare Services, Inc. ("UHC") is the Plan's claims administrator.  (SPD, Doc. No. 19-1, Ex. A at pg. 140.) It is UBH's understanding that a stipulation to amend the Complaint to add UHC as a Party is forthcoming.  For purposes of this Memorandum of Law, UBH and UHC will collectively referred to as "United".

the claims were not properly payable under the relevant Plan, TTS now argues that the assignment

of benefits is not valid to try to prevent United from properly recouping the payments that TTS is

not entitled to retain.  (Declaration of Kadee J. Anderson, Ex. A.)  None of the specious arguments

advanced by TTS in its Motion for Reconsideration changes the fact that TTS's claims are

completely preempted by ERISA and that this Court's exercise of jurisdiction over this matter is

proper.[2]

## II.     ARGUMENT

This Court has "considerable discretion" in deciding a motion for reconsideration.  *GFF*

*Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1386 (10th Cir. 1997).  As long as

this Court does not make "a clear error of judgment or exceed[ ] the bounds of permissible choice"

in deciding Plaintiff's Motion for Reconsideration, its decision will stand.  *Devon Energy Prod.*

*Co., v. Mosaic Potash Carlsbad, Inc.*, 693 F.3d 1195, 1212 (10th Cir. 2012).

Grounds warranting a motion for reconsideration include:  "(1) an intervening change in

the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error

or prevent manifest injustice."  *Id.*  Moreover, a motion for reconsideration should not be granted

absent "highly unusual circumstances."  *Id.*

TTS suggests that its Motion for Reconsideration is proper because United "produced a

copy of the Plan document in the afternoon of May 2, 2019."  (Pl.'s Mot. for Reconsideration at

pg. 2.)  What was produced **was not** the "Plan document" as stated by TTS.  Instead, the document

that was produced was the Wrap Agreement for the Celanese Health and Welfare Benefits Program

("Wrap").  The Wrap itself makes clear that it is not the only governing document for the Plan but

---

[2] TTS does not challenge the Court's holding that TTS's claims are in fact ERISA § 502(a)(1)(B)
claims, and therefore that prong of the ERISA preemption analysis will not be addressed here.

152608488.1

rather, simply one of multiple documents comprising the entire Plan document.  (Doc. No. 25-1 at

pg. 1.)  The Wrap states:

> The purpose of the Plan is to consolidate the multiple insured and/or self-insured
> health and welfare benefit plans sponsored and maintained by the Employer into a
> single, comprehensive health and welfare plan, for ease of administration and
> reporting.  This type of plan is sometimes referred to as a "wrap" or "umbrella"
> plan.  **While this document is designed to accomplish such consolidation, it is
> not the only document comprising the Plan**.  **Rather, the entire Plan document
> is actually a series of documents, consisting of this document plus the various
> contracts and/or booklets that describe the specific benefits, rights and
> features under the various welfare benefit programs that are consolidated in
> this Plan.  Together, this and such other documents comprise both the official
> "Plan document" and the "Summary Plan Description."**

(*See* Doc. No. 25-1 at pg. 1.) (emphasis added).  The document TTS claims is the definitive and

controlling "Plan document" itself makes clear that the official Plan document is actually

comprised of the Wrap **and** other component documents, including the SPD utilized by United to

administer claims on behalf of the Plan.  Moreover, the Wrap provides that this collection of

documents serve as both the official Plan document and the Summary Plan Description.  *See, e.g.*,

*Rhea v. Alan Ritchey, Inc. Welfare Benefit Plan*, 858 F.3d 340, 344-45 (5th Cir. 2017) (explaining

that plan sponsors commonly use a single document to serve as both the plan document and the

summary plan description and holding that where a plan has an SPD but no separate written

instrument, the SPD serves as the plan document)[3].

TTS may argue that the Wrap constitutes "new evidence previously unavailable," but, this

evidence was **not unavailable** to TTS.  At least as early as December of 2018, United informed

---

[3] The Wrap provides that the Plan is to be construed in accordance with the laws of the State of
Texas and all disputes related to the Plan should be venued in the United States District Court for
the Northern District of Texas.  (*See* Doc. No. 25-1 at § 8.9.)  Consequently, it is proper for the
Plan to follow Fifth Circuit precedent to govern a Texas Plan.  (*See* Doc. No. 19-1, Ex. A at pg.
140) (stating that Celanese Americas LLC is the Plan Sponsor and Plan Administrator and provides
and address for Celanese Americas LLC located in Irving, Texas.)

TTS that it was not the Plan Administrator and that requests for the Wrap must be made to the Plan Administrator, as expressly stated in the SPD, which TTS has had in its possession at least since April 12, 2019.  Specifically, the SPD states:

> A copy of the plan document is available for your inspection during regular business hours in the office of the Plan Administrator.  You (or your personal representative) may obtain a copy of this document by written request to the Plan Administrator, for a nominal charge.

(*See* Doc. No. 19-1, Ex. A. at pg. 109.)  So, to the extent the Wrap was unavailable to TTS, it is solely the result of TTS's failure to request the document from the proper entity after being advised to do so.  Moreover, as will be discussed below, even if the Wrap were considered previously unavailable evidence, it does not change the result reached by the Court in denying Plaintiff's Motion to Remand.

TTS's arguments other than the standing issue – arguments related to the durable power of attorney and TTS's admission that N.E.'s claims are time barred – are inappropriate for a motion for reconsideration as they rely on new legal arguments that could have been, but were not, made in support of TTS's Motion to Remand.  *See, e.g.*, *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000) (holding that motion for reconsideration is an inappropriate vehicle to reargue an issue previously addressed by the court by advancing new legal arguments not initially presented to the court).

### A.     There is No Inconsistency between the Wrap and the SPD Regarding Assignment of Benefits.

As an initial matter, it is important to note that United is not the Plan Administrator, and consequently not the party in possession of the Wrap.  In order for United to administer claims, in its role as Claims Administrator, it relies on the detailed terms of the SPD.  Despite TTS's argument to the contrary, in many instances there is not a separate Plan document apart from the

SPD and in such a case, the SPD serves as the Plan document.[4]  Consequently, it was not unreasonable for United, as the Claims Administrator, to have only the SPD, as that was the document it needed to administer claims for the part of the Plan it administers and it was not necessary that a separate Plan document exist.

While the Wrap does contain an anti-assignment provision, as will be discussed below, pursuant to the Wrap's terms, the anti-assignment provision in the Wrap was yielded by the assignment provision in the SPD.  Consequently, when the Wrap is read as a whole, it becomes clear that the outcome is the same – the irrevocable assignment through the durable power of attorney granted to, and relied on by, TTS is valid and provides TTS with ERISA standing.

Furthermore, TTS selectively quotes and misconstrues the holding in *CIGNA Corp. v. Amara*, 563 U.S. 421 (2011).  TTS claims that *Amara* holds that an SPD can never constitute the terms of a plan for purposes of an ERISA § 502(a)(1)(B) claim.  That is not *Amara*'s holding. *Amara* held that the terms of an SPD are not **necessarily** the terms of the Plan and that in the specific situation presented in *Amara*, the information about the plan provided in the SPD was not itself part of the plan.  *Id.* at 436.  Here, as explained below, the SPD is actually part of the official plan document and the Wrap specifically incorporates, and states that the SPD controls under certain circumstances, which are met here.  *Amara* does not address the situation presented in this case, where the Wrap itself specifically states that the SPD terms control.  In fact, courts have

---

[4] *See, e.g., Feifer v. Prudential Ins. Co. of Am.*, 306 F.3d 1202, 1209 (2d Cir. 2002) (holding that where an SPD is the only written document describing the benefits of the plan, it serves as the plan document); *Admin. Comm. of the Wal-Mart Stores, Inc. v. Gamboa*, 479 F.3d 538, 545 (8th Cir. 2007) (holding that where no other written source of benefits exist, a summary plan description is the plan document); *Rhea*, 858 F.3d at 344-45 (explaining that plan sponsors commonly use a single document to serve as both the plan document and the summary plan description and holding that where a plan has an SPD but no separate written instrument, the SPD serves as the plan document).

consistently rejected the argument that *Amara* requires in all instances that only the master plan document terms, instead of the SPD terms, support an ERISA § 502(a)(1)(B) claim.  *See, e.g.*, *Bd. of Trs. v. Moore*, 800 F.3d 214, 220 (6th Cir. 2015) ("Nothing in *Amara* prevents a document from functioning both as the ERISA plan *and* as an SPD....") (emphasis in original); *Bd. of Trs. of Nat. Elevator Indus. Health Ben. Plan v. Montanile*, 593 Fed. Appx. 903, 910 (11th Cir. 2014) (explaining that "*Amara* only precludes courts from enforcing summary plan descriptions ... where the terms of that summary *conflict* with the terms specified in other, governing plan documents." and that "*Amara* leaves open the possibility that terms in those summaries may, at times, be enforced, even though they are not always enforceable.") (vacated on other grounds); *Jenkins v. Grant Thornton LLP*, No. 0:13-CV-60957, 2015 WL 349275, at *1 (S.D. Fla. Jan. 23, 2015) (citation omitted) ("A plethora of authority exists for the proposition that (i) the holding in *Amara* was specifically targeted towards situations where a summary plan document *conflicts* with a master plan document and (ii) *Amara* does not address situations where a summary document is the *only* plan document.") (emphasis in original), *aff'd*, 667 Fed. Appx. 754 (11th Cir. 2016) (per curiam), *cert. denied*, 137 S. Ct. 1070 (2017); *L&W Assocs. Welfare Benefit Plan v. Estate of Wines ex rel. Wines*, No. 12-CV-13524, 2014 WL 117349, at *6 (E.D. Mich. Jan. 13, 2014) ("*Amara* does not support the broad proposition urged by the Estate, i.e. that an SPD can never serve as an ERISA plan document.").  Here, as explained below the terms of the SPD do not conflict with the Wrap and moreover, the Wrap makes clear that the **SPD is actually part of the official Plan document**.  Indeed, the Wrap specifically states that the terms of the SPD control in the circumstances present here.

It should be noted that the Wrap gives the Plan Administrator, and any entity delegated by the Plan Administrator, the "discretionary authority to interpret the provisions of the Plan." (*See*

Doc. No. 25-1 at §§ 5.1 & 5.2(b).)  Moreover, the Wrap requires that the document be "read in its entirety, and not severed except as provided in Section 8.8[5]") (*See* Doc. No. 25-1 at § 8.1.)  When the Wrap is examined in its entirety – as it must be pursuant to the terms of the Wrap – it is clear that the language in the SPD which does not preclude assignment of benefits applies in this situation.  In this regard, Section 6.1 of the Plan document states:

> This Article VI applies to the extent the reimbursement and subrogation terms of an applicable Component Document[6] do not supply greater rights than the Plan.  **If the reimbursement and subrogation terms of an applicable Component Document supply greater rights, the terms of such Component Document will apply**.  For purposes of this Article VI, **a Component Document is "applicable" if benefits under the Component Document are the subject of a reimbursement or subrogation claim by this Plan**.

(*See* Doc. No. 25-1 at § 6.1.) (emphasis added).  Here, without question, benefits under the SPD are the subject of a reimbursement claim by the Plan.  Indeed, the Plaintiff seeks a declaration that United does not have a right to the reimbursement of benefits erroneously paid under the terms of the Plan.  Therefore, the SPD – as a Component Document - will govern if the SPD supplies greater rights than the Wrap regarding reimbursement and subrogation.

In fact, the SPD does supply greater rights pertaining to United's ability to seek reimbursement and subrogation on behalf of the Plan.  For example:

- The SPD provides that "In the case of your wrongful death or survival claim, the provisions of this section apply to your estate, the personal representative of your estate, and your

---

[5] Section 8.8 of the Plan document states:  "If any provision of the Plan is held invalid or unenforceable, its invalidity or unenforceability will not affect any other provisions of the Plan, and the Plan will be construed and enforced as if such provision had not been included herein." (*See* Doc. No. 25-1 at § 8.8.)

[6] Appendix I of the Plan document lists the Plan's Component Documents and includes "UnitedHealthcare's Summary Plan Descriptions for each applicable Active or Retiree medical option."  (*See* Doc. No. 25-1 at pg. UBH47.)  The SPD at issue here is a Component Document of the Plan, and part of the official Plan document.

heirs or beneficiaries." (*See* Doc No. 19-1, Ex. A at pg. 95.) There is no such requirement in the Wrap.

- The SPD invalidates the insured's ability to allocate damages, settlement funds, or any other recovery unless the Plan is fully reimbursed or consents to the agreement in writing. (*See* Doc. No. 19-1, Ex. A at pg. 95.) The Wrap does not give United the right to invalidate an agreement between the insured and a third party.

- The SPD requires an insured who receives payment from any party as a result of Sickness or Injury that are alleged by the Plan to be due and owed to the Plan to be held in trust in a separate bank account in either the insured's name or the insured's attorney's name. (*See* Doc. No. 19-1, Ex. A at pg. 95.) In contrast, the Wrap provides that the Plan will have a constructive trust over such funds. It does not require the funds be held in legal trust in a specified bank account.

In the examples provided above, the SPD grants United greater rights related to seeking reimbursement or subrogation on behalf of the Plan than the Wrap. And these are just several examples. Because benefits under the SPD are subject to a reimbursement claim by the Plan, and the SPD grants greater rights than the Wrap, pursuant to the terms of the Wrap, the SPD, as a whole, controls. Thus, there is no inconsistency between the terms of the SPD and the terms of the Wrap, as claimed by TTS. And the SPD's assignment provision – which does not prohibit the assignment of benefits – controls for purposes of this case involving reimbursement of benefit under the SPD. Therefore, the Court's analysis in its Order Denying Plaintiff's Motion to Remand stands.

**B.      The Durable Power of Attorney Did Not Become Void when N.E. Reached the Age of Majority.**

TTS claims that the durable power of attorney does not grant TTS ERISA standing because it did not survive N.E. reaching the age of majority, which TTS alleges occurred on April 15, 2018. Therefore, according to TTS, the durable power of attorney was void on February 1, 2019, when TTS originally served its Petition.  TTS cites no authority for this proposition, nor does the durable power of attorney itself state that it terminates once N.E. reaches the age of majority.

Notably, the durable power of attorney states:

> Each of my said attorneys shall have full and unqualified authority to my attorney(s)-in-fact to delegate any or all of the foregoing power to any person or persons whom my attorney(s)-in-fact shall select, **to the maximum extent from time not forbidden by law**.

(*See* Doc. No. 19-3, Ex. C) (emphasis added).  United is not aware of, nor has TTS cited, any law prohibiting a durable power of attorney from remaining in place and valid past the principal's age of majority.  In fact, durable powers of attorney are meant to survive many contingencies, including the subsequent incapacity or incompetence of the principal.  Indeed, the durable power of attorney at issue here so states:

> This Durable Power of Attorney shall not be affected by the subsequent disability, incapacity, or incompetence of the Principle [sic] except as provided in Title 3 Chapter 5 of the Wyoming Statutes[7], and other specifically applicable law.

(*See* Doc. 19-3, Ex. C.)  Significantly, the durable power of attorney expressly provides that N.E.'s guardian "**… hereby irrevocable assign and authorize direct payment to TTS of any and all insurance policy proceeds and/or medical benefits otherwise payable to me/us by our**

---

[7] All sections of Title 3 Chapter 5 of the Wyoming Statutes have been repealed, except W.S. § 3-5-103 which addresses a principal revoking a power of attorney through recordation, and thus has no applicability here.

152608488.1

**insurance company for services rendered by TTS and direct my/our insurance carrier to pay**

**such benefits directly to Trinity Teen Solutions, Inc.**

(*See* Doc. No. 19-3, Ex. C) (emphasis in original).  By its own terms, the durable power of attorney

grants **irrevocable** rights to TTS.  Nowhere in the durable power of attorney does it provide that

it terminates once N.E. reaches the age of majority.  N.E. achieving the age of majority simply did

not terminate the durable power of attorney.

> **C.      The Durable Power of Attorney at Issue Contains an Irrevocable Assignment of Benefits and therefore allows TTS to Sue in its Own Name.**

TTS argues that the durable power of attorney could not confer ERISA standing because a

power of attorney does not allow the agent to sue in its own name, and thus TTS could not have

brought an action under ERISA.  In support of this argument, TTS cites to Wyoming's Uniform

Power of Attorney Act, W.S. § 3-9-101 et seq.  But according to the plain language of Wyoming's

statute, it does not apply to the durable power of attorney at issue here.  *See* W.S. § 3-9-103(a)(i)

("This act applies to all powers of attorney **except** (i) A power to the extent it is coupled with an

interest in the subject of the power…") (emphasis added).  Here, the durable power of attorney is

coupled with an interest in the subject of the power.  The durable power of attorney itself includes

an irrevocable assignment of benefits – meaning TTS was given an interest in the ERISA benefits

(making the Wyoming Statute inapplicable by its own terms) and thus TTS stands in the insured's

shoes and has standing to sue in its name under ERISA as a beneficiary of claims paid by the Plan

based on the assignment.  *Denver Health & Hosp. Auth. v. Beverage Distrib. Co., LLC*, 546 Fed.

Appx. 742, 745 (10th Cir. 2013).

The durable power of attorney states:

> I/We hereby assign and authorize direct payment to TTS for any and all insurance policy proceeds and/or medical benefits otherwise payable to me/us by our insurance company for services rendered by TTS.  **I/we authorize payment of**

**medical benefits directly to TTS for services rendered.   I/We hereby irrevocably assign and authorize direct payment to TTS of any and all insurance policy proceeds and/or medical benefits otherwise payable to me/us by our insurance company for services rendered by TTS and direct my/our insurance carrier to pay such benefits directly to Trinity Teen Solutions, Inc.**

(*See* Doc. No. 19-3, Ex. C) (emphasis in the original).  Because the durable power of attorney at issue is coupled with an irrevocable interest in the subject of the power, the Wyoming Uniform Power of Attorney Act, by its own terms, does not apply.

Moreover, the case law cited by TTS also demonstrates that its argument fails.[8]  Plaintiff quotes the following language from *Laney v. Schneider Nat'l Carrier, Inc.*:

> a number  of federal courts construing the laws of various states have ruled that where, as here, a person authorized to bring suit **solely on the basis of a power of attorney** has no right to sue in his or her own name.

 No. 09-c-389-TCK-FHM, 2011 WL 13096625, at *2 (N.D. Okla. March 29, 2011) (emphasis added).  As just explained above, however, TTS is not authorized to bring suit **solely** on the basis of a power of attorney.  Instead, TTS is authorized to bring suit in its own name by the irrevocable

---

[8] TTS cites to cases from the Southern District of New York to argue that United is taking inconsistent positions regarding ERISA standing pursuant to powers of attorney.  That is not the case.  The cases cited by TTS involved different plans with different terms.  United does not seek to advance a certain outcome regarding ERISA standing, but instead seeks to honor and enforce the terms of the distinct Plans and SPDs at issue in a particular case.  And in any event, these cases are not inconsistent with United's argument here.  The Court in *Med. Soc'y of New York v. UnitedHealth Group, Inc., et al.*, held absent a valid assignment, the power of attorney alone did not grant the provider ERISA standing.  No. 16-cv-5265 (JPO), 2017 WL 4023350, at *7 (S.D.N.Y. Sept. 11, 2017).  Here, the durable power of attorney incorporates an irrevocable assignment of benefits, and therefore TTS's ERISA standing does not rest on a power of attorney alone.

152608488.1

assignment included within the durable power of attorney, which it relied on to obtain payment of benefits under the Plan. (*See* Doc. No. 19-3, Ex. C.)

TTS's reliance on *Titus v. Wallick* is similarly misplaced. Significantly, the United States Supreme Court in *Titus* held:

> The Ohio court, placing emphasis on the presence of the power of attorney in the assignment, disregarded the words of assignment and gave to the instrument the more restricted effect of a power of attorney. **While a power of attorney to sue, standing alone, does not under the New York law operate as an assignment to vest the attorney with such title or interest as will enable him to maintain the suit in his own name, the addition of the power to petitioner's assignment did not deprive it of its force and character as an assignment.**

306 U.S. 282, 289 (1939) (internal citations omitted). Here, TTS ignores the irrevocable assignment of benefits that is a part of the durable power of attorney to argue that it does not have standing to sue in its own name. As the United States Supreme Court explained, that is not the case – because the durable power of attorney contains an irrevocable assignment (which TTS relied on to obtain payment of benefits under the Plan), TTS has standing to bring an ERISA claim in its own name.

> **D.      While the Fact that N.E.'s, and Consequently TTS's Claims, are Time-Barred under the Terms of the Plan may well Mean that TTS's Claims are Ultimately Dismissed, it does Not Deprive TTS of Standing in the First Instance.**

TTS admits that N.E.'s claims are time-barred under the terms of the Plan. This Court has already found that TTS steps into N.E./N.E.'s guardian's shoes. (*See* Order Denying Motion to Remand, Doc. No. 23 at pg. 5.) Consequently, since TTS only has claims that N.E. or N.E.'s guardian may have had, TTS has acknowledged that any claims it had are now time-barred. In any event, TTS conflates an unmeritorious claim that is subject to dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure with a claim that is subject to dismissal under Rule 12(b)(1) for lack of subject matter jurisdiction predicated on a lack of standing. Just because TTS' claim

are unmeritorious because, among other reasons, they are time-barred, does not mean that TTS did not have standing to bring the claims.  As the court in *Crown Energy Inc. v. OCS Am. Capital, Ltd.*, explained:

> First, Defendant argues that Plaintiff lacks standing to pursue the claims asserted in the Complaint. However, Defendant's standing argument simply recapitulates the same arguments as to why Plaintiff fails to state a claim for relief–namely, that (1) Plaintiff's allegations fail to establish the existence of an enforceable contract between Plaintiff and Defendant, and (2) Plaintiff's allegations fail to demonstrate that it suffered damages. The court finds these considerations do not implicate Plaintiff's standing; instead, they relate only to the sufficiency of Plaintiff's claims for relief. Indeed, if a defendant were permitted to attack a plaintiff's standing based solely on the whether the plaintiff has sufficiently pleaded the elements of its claims, Rule 12(b)(6) would effectively be swallowed by Rule 12(b)(1).

No. 13-cv-2076-MSK-KMT, 2014 WL 2700155, at *1 (D. Colo. June 12, 2014).  Even though TTS's claims are admittedly time-barred which will likely lead to the dismissal of the claims, it does not deprive TTS of standing.

## III.    CONCLUSION

TTS cannot have it both ways.  It cannot argue that it has a valid assignment of benefits when it wants to get paid, and then turn around and argue there is no valid assignment of benefits when United properly seeks reimbursement of funds that TTS has no right to retain.  The fact remains, TTS has ERISA standing and seeks to enforce and clarify its rights under an ERISA plan. There is no independent legal duty to support the relief sought by TTS.  Consequently, TTS's claims are completely preempted by ERISA, giving this Court original jurisdiction over the claims. Removal was therefore proper and United respectfully requests that the Court deny TTS's Motion to Reconsideration of this Court's Order Dated April 22, 2019 Denying Plaintiff's Motion to Remand.

DATED this 17th day of May, 2019.

/s/Amy M. Iberlin
Amy M. Iberlin, W.S.B. #7-5322
WILLIAMS, PORTER, DAY & NEVILLE, P.C.
159 North Wolcott, Suite 400
P.O. Box 10700
Casper, WY 82602-3902
Telephone:     (307) 265-0700
Facsimile:     (307) 266-2306
E-Mail:         aiberlin@wpdn.net

Donald T. Campbell (admitted pro hac vice)
Kadee J. Anderson (admitted pro hac vice)
STINSON LEONARD STREET LLP
50 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Telephone:     (612) 335-1500
Facsimile:     (612) 335-1657
E-Mail:         donald.campbell@stinson.com
                 kadee.anderson@stinson.com

**ATTORNEYS FOR DEFENDANT UNITED BEHAVIORAL HEALTH**